J. W. MILBURN as Administrator, Emerson Estate, v. JOHN H. EAST, LORENA EAST and JOHN HERSCHEL EAST, Appellants.

**Estates of decedents:** ADJUDICATION. An order directing an administrator to retain and treat as estate property certain rent notes, no reference being made to the lease, such order being based on an application by the administrator for a rule requiring a third- person to appear and show cause why such lease and notes should not be delivered to him, to which such third party filed answer simply claiming the same by virtue of an interest in the property out of which the rent arose, but made no further appearance, did not amount to an adjudication as to the ownership of the property.

**Same.** Where, on an administrator's application to recover a certain lease and rent notes, an order was entered directing him to dispose of the notes as estate property, but no reference was made to the interest of certain nonresident defendants, heirs of the intestate, in the estate, such heirs were not parties to the proceeding through the administrator under the provisions of Code section 3333, and were not bound by any adjudication as to the ownership of the property out of which the rent arose.

**Order for sale of real estate.** Code section 3323, does not require the final establishment by an administrator of valid claims against an estate before an order for the sale of real estate to pay debts will be made, but an allowance of claims by the administrator is prima facie sufficient to authorize an order for such sale.

**Same.** Ordinarily an application for an order to sell real estate, to pay claims against an estate, should be made within the time allowed for the filing and allowance of claims; but where it appears that no real property was discovered until after the expiration of that time, and diligence has been shown, an order of sale may properly be made.

*Appeal from Hamilton District Court.*— HON. J. R. WHITTAKER, Judge.

TUESDAY, APRIL 4, 1905.

PETITION in probate by plaintiff, as administrator of Priscilla Emerson, deceased, to sell certain real estate for the purpose of paying claims against her estate. The defendants, claiming adversely to the title alleged to be in Priscilla Emerson, resisted the application. The case was tried by consent as in equity, and decree was rendered ordering the sale of the property, from which defendants appeal.— *Affirmed.*

*George W. Hewitt,* for appellants.

*Wesley Martin* and *Chas. A. Biernatzki,* for appellee.

McCLAIN, J.— Priscilla Emerson died in 1898, having been for several years a widow. She left surviving her, as heirs, Lorena May East and John Herschel East, the children of her deceased daughter, Eva May East, and her surviving husband, John H. East, who is also a defendant in this action. In 1899 plaintiff was appointed administrator of the estate of Priscilla Emerson, and served due notice of his appointment. Within 12 months, claims to the amount of $1,200 were filed, proven and allowed against the estate. But the personal property was of small amount, and insufficient to pay the costs of administration. Not until June, 1902, was any real property discovered belonging to Mrs. Emerson; but at that time the administrator learned that there was a deed in the possession of John F. Duncombe, who had been the attorney for Mrs. Emerson, purporting to convey to her from her daughter Eva May East the real property involved in this proceeding. The administrator then petitioned to have said property sold for the payment of claims allowed against the estate. This property had been conveyed by Mrs. Emerson

to her daughter, Mrs. East, by deed duly recorded, and the deed of reconveyance bore date February 7, 1894, and was not recorded. The evidence shows, however, without conflict, that this deed was delivered for Mrs. East to Mrs. Emerson on the day of its execution, and that it was subsequently by Mrs. Emerson placed in the hands of Duncombe as her attorney. During Duncombe's lifetime he stated that he held such a deed for Mrs. Emerson, and after his death it was found among other papers which had been held by him for her. There is no evidence that the delivery of the deed to Mrs. Emerson was coupled with any condition, or that it was placed in the hands of Duncombe to be held in escrow, or otherwise, save as an instrument fully executed and delivered to Mrs. Emerson. Title to the land in controversy in Mrs. Emerson was therefore fully made out, and we cannot indulge in any surmises or conjectures as to possible conditions which would defeat the conveyance of the title which the instrument thus executed and delivered purports to convey. The evidence of the deed itself is, however, corroborated by proof that taxes were subsequently paid by Mrs. Emerson, and that another parcel of real property conveyed by Mrs. East to Mrs. Emerson by another deed of the same date, and also remaining unrecorded, was subsequently, by recorded deed, conveyed by Mrs. Emerson to Mrs. East. There is also proof of declarations made by Mrs. Emerson as to her ownership of the property.

It is contended, however, for appellants, that there was an adjudication during Mrs. Emerson's life that the property belonged to Mrs. East. The proceedings relied upon were as follows: George W. Hewitt, having been appointed administrator of the estate of Mrs. East while Mrs. Emerson was still living, made application to the probate court for an order on Mrs. Emerson, requiring her to appear and show cause why she should not deliver to said ad-

1. ESTATES OF DECEDENTS: adjudication.

ministrator a certain lease and certain notes which had been executed to her in connection with the rental of the premises in controversy, the allegation being that Mrs. Emerson had acted in the renting of such premises as the agent of Mrs. East. In this proceeding Mrs. Emerson made answer that she claimed the lease and notes by virtue of an interest in the property. Subsequently, Mrs. Emerson not appearing further in person or by attorney, the judge entered an order in probate directing Hewitt, as administrator, to retain the rent notes and treat them as a part of the estate of Mrs. East. But no order was made with reference to the lease itself. The claim is that this constituted an adjudication of title in Mrs. East conclusive on Mrs. Emerson, and counsel have gone into an elaborate discussion of the doctrine of *res adjudicata*. We think it sufficient, however, to say that the order of the probate court in the proceedings instituted by Hewitt, as administrator of Mrs. East, could not constitute an adjudication of the title as against Mrs. Emerson, for the following reasons: First, because the probate court had no authority in that proceeding to determine the title to the real estate, for Hewitt, as administrator, had no interest in the real estate of Mrs. East which he was seeking to assert in that proceeding; and, second, because the court made no determination as to the title to the real estate, but only as to the title to the rent notes. It is said that the title to the real estate was collaterally involved, for, if it belonged to Mrs. East, that would be a reason why the notes belonged to her estate; while, on the other hand, if it belonged to Mrs. Emerson, the notes would not belong to the estate of Mrs. East. But there may have been other reasons why Mrs. East's estate was entitled to the possession and proceeds of the rent notes, and, however that may be, Mrs. Emerson did not put in issue, nor contest in the probate court, the title of Mrs. East to the property, by asserting and insisting upon title in herself as a reason why the notes did not belong to Mrs. East's

estate.    As already stated, Mrs. Emerson, after making an-
swer in the proceedings for the discovery of property of
Mrs. East's estate, as authorized under the provisions of
Code, section 3315, took no further part in the proceedings,
and cannot be bound by the adjudication of the probate court
as to a matter which was not by her made an issue therein.
We reach the conclusion that the order of the probate court
in the administration of the estate of Mrs. East did not con-
stitute an adjudication binding on Mrs. Emerson as to the
title to this property.

Another sufficient reason for holding that the order of
the probate court in the administration of the estate of Mrs.
East was not an adjudication as to the title of the property
as against Mrs. Emerson is that the proceeding
2. Same.        was not between the parties who are at issue
in the present proceeding.    Mrs. East, having died before
the death of Mrs. Emerson, the title of the property in ques-
tion was either in Mrs. Emerson or in the defendants in the
present suit.    Hewitt, as administrator of Mrs. East's estate,
did not represent these defendants.    His contention is, how-
ever, that under Code, section 3333, he represented and acted
for these defendants, who are nonresidents, with reference to
the rents and profits of this real estate as belonging to them.
But the order of the court, made on his application, was that
the rent notes should be disposed of by him as belonging to
Mrs. East's estate; and no reference whatever was made to
the interests of these defendants, and there was therefore no
adjudication, so far as these defendants were concerned, in
that proceeding.    It is clear, therefore, that that adjudica-
tion, whatever it may have been, was not an adjudication
as between the parties to the present controversy.

It is further contended for appellants that on this ap-
plication to sell real estate the fact of the existence of valid
claims against the estate of Mrs. Emerson should have been
affirmatively established by the administrator asking to have
this real estate subjected to the payment of such claims.

We find no such requirement in our statute. Code, section

3323, provides that: "If the personal effects

3. ORDER FOR
SALE OF REAL
ESTATE. are found inadequate to satisfy the debts and

charges, a sufficient portion of the real estate may be ordered sold or mortgaged for that purpose, application therefor being made in the court granting administration, and only after a full statement of all the claims against the estate, and after rendering a full account of the disposition made of the personal estate." It is, of course, true that the heirs entitled to the real estate, not being parties to any proceeding for the allowance of claims against the estate, are not bound by such allowance. But, for that matter, the persons entitled to share in the distribution of personalty, and who are by our rules of descent the persons who inherit the real property, are not necessary parties to the proceeding for the allowance of claims. They may by proper steps resist the allowance, and the same opportunity is open to them, so far as it may be anticipated that such claims may subsequently be enforced against the real estate. Perhaps it may be said that as to the distribution of the personal estate they are directly represented by the administrator, but that as to the liability of the real estate there is no such representation. However this may be, they are not bound in either case by the allowance of claims by the administrator.

Although there is considerable conflict in the cases decided in other States with reference to the effect of the allowance of a claim by an administrator as affording the basis on which sale of real estate may be ordered, the weight of authority seems to support the proposition that the allowance in probate is *prima facie* sufficient to authorize an order for the sale of the real estate, and that, while the heirs who are parties to the proceedings for the sale of real estate may on the hearing contest the validity of the claims already allowed in a proceeding to which they were not parties, yet it is not incumbent on the administrator to proceed in the

first instance to prove up the claims for the payment of which he asks that real estate be sold. To cast any such burden upon him would be manifestly unjust. He is not the claimant, but is simply proceeding, in the administration of his office, to secure assets with which to pay claims which the court may have already directed should be paid. As supporting the rule that the allowance of the claims by the probate court is sufficient *prima facie* as against the heirs to authorize an order for the sale of real estate, see *Hopkins v. Stout*, 69 Ky. 375; *Steele v. Lineberger*, 59 Pa. 308; *Mason v. Bair*, 33 Ill. 194; *Stone v. Wood*, 16 Ill. 177; *Beckett v. Selover*, 7 Cal. 215, 228 (68 Am. Dec. 237); 2 Woerner, Administration, section 466. In *Willett v. Malli*, 65 Iowa, 675, this court has held that the allowance of the claim by the probate court is not an adjudication of its validity as against the heirs; but after referring to the cases, among those cited above, in which the allowance is held to be *prima facie* evidence, the court proceeds to distinguish the case under consideration, and leaves the question open. In the present case, the allowance of the claims by the probate court was proven, and defendants made no effort whatever to disprove or impeach the claims thus allowed. We think that, after the allowance of the claims was shown, it was for the defendants, if they desired to question the validity of any of the claims, to at least introduce some evidence of their invalidity, and thus overcome the *prima facie* case made by proof of allowance.

While the administrator in this case was appointed in 1899, the application for sale of real estate was not made until in 1902, or about three and one-half years after the appointment of the administrator. It has been held that, in the absence of peculiar circumstances excusing delay, the application should be made within the time allowed for filing and allowance of claims. *McCrary v. Tasker*, 41 Iowa, 255; *Conger v. Cook*, 56 Iowa,

4. SAME.

117. But in several cases the order allowing sale of real estate has been approved, although the delay in filing the application has been as great as in the case before us. See *Reed v. Reed,* 94 Iowa, 569, and cases there cited. In the present case, it is shown that every reasonable effort was made to discover real property of Mrs. Emerson which might be subjected to the payment of claims against her estate, but without avail, by reason of the fact that the deeds of conveyance of this and other real property to her had not been recorded. As soon as the administrator discovered the existence of these deeds, he proceeded with reasonable promptness, and we think the court was justified in refusing to dismiss the proceedings on the ground that it was not commenced in time.

The decree of the lower court is therefore *affirmed.*