# CHARLESTON.

## MORGAN v. ICE et al.

### Submitted April 10, 1917.　Decided April 17, 1917.

1. EQUITY—*Decree Pro Confesso—Requisites of Bill.*

   To support a decree *pro confesso,* the bill upon its face must state a good cause for equitable relief.　(p. 276).

2. JUDGMENT — *Proceeding to Enforce Liens — Bill by Assignee — Requisites.*

   In a suit to enforce as a lien upon real estate a decree recovered by the receiver of an insolvent state banking institution, plaintiffs, who assert the lien as assignees thereof, must by their bill aver due authority of the receiver to make the assignment.　(p. 276).

3. SAME—*Proceedings to Enforce Lien—Parties.*

   Where the assignees of such decree have constituted two of their number trustees to enforce and collect the lien on their behalf, the beneficiaries of the trust are necessary parties to a suit brought by the trustees for that purpose.　(p. 276).

4. FRAUDULENT CONVEYANCES—*Avoidance of Deed—Parties.*

   In a proceeding to declare void as to creditors a deed fraudulently procured by the debtor, on her payment of the entire purchase money, to be made to a third person as grantee, the grantor, who retains no interest in the land or lien thereon and against whom no fraud is charged or relief sought, is not a necessary party to the bill.　(p. 279).

Appeal from Circuit Court, Wetzel County.

Suit by I. D. Morgan, trustee, etc., against Emma M. Ice and others.　Decree for complainant, and defendants appeal.

*Reversed and remanded.*

*Thos. P. Jacobs* and *Thos. H. Cornett,* for appellants.

*John Ross, Jr.,* and *L. Carlin,* for appellee.

LYNCH, PRESIDENT:

Upon this appeal, awarded to defendant Emma M. Ice and others to review the decrees rendered September 22, 1915, February 1 and May 26, 1916, the questions of primary importance are, first, whether in a suit by trustees to set aside

as fraudulent and voluntary deeds made by Emma M. Ice, the principal debtor, or by her procured to be made, to near relatives, to defraud plaintiffs in the collection of the debt sought to be charged against the real estate conveyed, the beneficiaries of the trust are necessary parties; and, second, whether when the debt is based upon a decree renderd in an independent proceeding against the same debtor, which the plaintiff, therein, the receiver of the Bank of Smithfield, an insolvent state banking corporation, assigned to its stockholders, in whose behalf this suit is prosecuted by their trustees, it is necessary also to allege and show the authority of the receiver to make such assignment, and if he had that authority whether the plaintiffs ought to have set out the facts and circumstances relating thereto with greater particularity than was done in the bills filed by them. Out of the same transactions and the averments of the bills other questions of minor importance arise; but in our view of the case on these questions it is not now proper to express an opinion.

Except in so far as the decree alleged to have been assigned by Cecil B. Highland as receiver to the plaintiffs, I. D. Morgan and J. S. Robinson, trustees for themselves, John M. Hart and others, discloses, neither the original nor the amended bill furnishes any information of the facts and circumstances upon which the decree is predicated, or the source or origin of the trust relation between the plaintiffs and the beneficiaries of that relation. The caption of the bills does show that Morgan and Robinson, trustees, sue on behalf of themselves, John M. Hart and others, and the first paragraph of the original bill alleges that plaintiffs were duly appointed by mutual agreement of the above named beneficiaries, stockholders of the Bank of Smithfield, and that as trustees they were empowered and authorized to collect and reduce to their possession on behalf of the beneficiaries all claims and assets then due or to become due from any source whatsoever.

On August 2, 1915, plaintiff I. D. Morgan, as surviving trustee of himself, John M. Hart and others, filed an amended bill, introducing other persons as parties defendant, and alleging the death of J. S. Robinson, his co-trustee, and

as fraudulent and voluntary the execution of another deed by C. L. Burdick, the daughter of Emma M. Ice, conveying to H. L. Flanagan, her sister-in-law, lot 72 in Paden City.

By decree of September 22, 1915, the deeds attacked by the bills were annulled as fraudulent as to the creditors of Emma M. Ice, except the grant to Flanagan, who, because of the undenied allegation of the payment by Mrs. Ice of the consideration therefor and her relationship to the grantee and her vendor, was adjudged to hold the title to lot 72 in Paden City as trustee for the sole use and benefit of her co-defendant Emma M. Ice. By that decree the balance of $2736 due on the decree assigned to plaintiffs was held to be a lien on the lands conveyed, and an order of reference entered to ascertain and report the real estate owned by the defendant debtor and the liens thereon and their priorities.

The first appearance of the defendants Emma M. Ice, C. L. Burdick and Lory F. Ice was by way of exception to the report of the commissioner, filed January 10, 1916, the prior decrees having been rendered upon the bills taken for confessed. The decree of February 1, 1916, overruled these exceptions, confirmed the report, ascertained the real estate owned by Emma M. Ice and the liens thereon as reported, and directed a sale of the lands to satisfy the liens, and appointed a commissioner to execute it. Their second appearance, together with H. L. Flanagan, was in open court, upon a notice given by them returnable May 2, 1916, that being the first day of the May term, that they then would, as they did, move the court to rehear, reverse and set aside the decrees of September 22 and February 1. The grounds of the motion were, first, that the bills were insufficient in law to support the default decrees; second, want of proper parties, designating those declared to be omitted improperly; third, that the suit was not matured and ready for hearing on the date of the first decree, and for other errors apparent on the record. The decree of May 26, 1916, overruled the motion so made, and confirmed the sale made pursuant to the decree of February 1. This motion of course was made under the authority of sections 5 and 6, ch. 134, Code, in order to afford the court an opportunity to correct its own errors,

if any, committed in the cause, as a condition precedent to the right to obtain this review.

The ground first assigned by the notice of the motion has the same effect as a challenge to the sufficiency of the two bills. It says they are not sufficient in law. Is that objection well taken? It is, unless it can be said it is unnecessary to make the beneficiaries in a trust parties to a bill seeking to enforce it as a lien upon real estate, or unless it is unnecessary under proper procedure to aver the authority of the receiver to assign the decree obtained by him in a different suit.

The appellee, the surviving trustee, virtually concedes in his brief that the beneficiaries of the trust are proper, if not necessary, parties. But he argues that appellants can not now raise that question, nor the question as to the authority of the receiver to assign such decree; and, further, that these defects, if such they be, were not specified in the notice of the motion to reverse. The first contention is based upon the theory that, although duly summoned, appellants can not now complain of the default decrees, because they failed to appear to the cause for any purpose, save to except to the report of the commissioner, and not thereafter until the motion made by them to rehear and reverse the decrees. As to these subordinate contentions, it suffices to say that the statute is intended to afford a defendant an opportunity, indeed makes it his duty, to move to set aside a decree by default as a condition of the right to apply for a writ to review the decree. Otherwise, the statute is purposeless, and the defendant remediless, in the absence of such motion. The misapprehension of counsel seems to be due in part to the conception that appellants should have pointed out more definitely the particulars in which the bills are insufficient. But we are of opinion that this is not necessary, and that the general charge that the bills are defective is sufficient to require an examination to determine whether the pleadings present a good cause for relief.

The usual and better procedure requires that the beneficiaries in an active trust, should be made parties plaintiff or defendant in a suit to enforce the trust. The authorities,

including those cited by counsel for appellee, acknowledge the existence of that rule, and ordinarily enforce it, although they admit the exceptions thereto noted by counsel. *Beckwith* v. *Laing,* 66 W. Va. 246, and cases cited. Counsel, however, undertake in argument to show that the Beckwith case has no controlling effect here, because they contend it did not involve an active but a dry or passive trust. But its object was to enforce specific execution of a contract of sale of coal lands, the purchaser and plaintiff describing himself as trustee; and it was held that the beneficiaries in the trust were necessary parties, and that their omission rendered the bill defective and hence demurrable. A dry or passive trust, as defined by 1 Bouvier Law Dict. 946, is one which requires no action on the part of the trustee beyond turning over the money or property to the *cestui que trust.* Or, as defined in 39 Cyc. 30, it is one in which the trustee is a mere passive depositary of the property, with no active duties to perform. Beckwith was to become the purchaser of the property as trustee, under an optional contract which contained the provision that the seller was to assign it to Beckwith or to such person or corporation as should answer the description of the assignee to be designated as the one to whom it could be assigned. And in the opinion it is said that while the contract "does not disclose the name of the *cestui que trustent* it establishes a fiduciary relation or status on the part of the plaintiff. In view of this the court should have regarded the bill as defective for want of proper parties and sustained the demurrer thereto". It can not be said this constitutes a mere naked trust, nor that the action on the part of Beckwith was merely passive.

Furthermore, the authorities are uniform in holding that bills such as we have before us should allege therein the source of the authority under which the trustees act and of the assignment which they seek to enforce as in this case. Where the assignor is also a party, and has opportunity to affirm or controvert the allegation that he made the assignment or caused it to be made, and the authority under which he acted in so doing, such particularity in the pleading may not be necessary. A receiver of an insolvent state banking

corporation can not assign the assets committed to his custody, except upon the order of the state banking commissioner or of a court of competent jurisdiction. §81a7, ch. 54, Code. Without such an order, he can not distribute the funds in his hands to the creditors of the bank, or pay to the shareholders any excess remaining in his hands after satisfying the debts of the corporation; although it may be that if he has done so without such authority expressly conferred, equity may condone the omission, to the end that injustice may not result to an assignee acting *bona fide* and without detriment to the creditors and stockholders of the insolvent institution.

That these allegations could readily have been supplied by counsel, whose brief evinces careful preparation, is apparent; because therein it is stated that since the recovery of the decree by the receiver he "has made a settlement with the creditors of the bank, and, under sanction of a court order, has assigned all unliquidated claims and assets in his hands to the trustee plaintiffs herein for the benefit of the stockholders named as beneficiaries, they having provided the receiver with funds for the complete settlement with the creditors of the bank". Had the pleader exercised the same caution in preparing the bills, the pleadings would not perhaps be subject to the criticism now urged against them. But we think this is a fatal omission.

That omission, however, would not, as appellee contends, warrant reversal of the default decrees under chapter 134, nor upon appeal, but for the first ground assigned as basis of the motion to reverse, and the fourth ground or general assignment of "errors apparent on the face of the record." These assignments challenge the sufficiency of the pleadings as if by demurrer thereto. The fourth ground, as held in *George* v. *Zinn,* 57 W. Va. 15, brings before the appellate court all the errors of law in the decrees. To support a default decree, the bill must be sufficient to stand the test of a demurrer. Although in *Globe Insurance Co.* v. *Reed,* 19 Ind. App. 203, *Dame* v. *Coceti,* 79 Pac. 296, *McAllister* v. *Kuhn,* 96 U. S. 57, and *Crogin* v. *Lovell,* 109 U. S. 199, it is held that upon error to reverse a judgment by default such defects in

the declaration as defendant could have raised by demurrer may be reviewed, 16 Cyc. 495 and cases cited state the same doctrine as to decrees *pro confesso.* Such an order or decree is not inherently an adjudication; and, while it establishes an admission of the truth of definite and certain allegations of the bill, it does not preclude an inquiry into the sufficiency of such allegations as are indefinite and uncertain. *Campbell* v. *Lynch,* 6 W. Va. 17. The latter will not sustain a decree *pro confesso* unless they are supplemented by an adequate amount of proof. *Williams* v. *Corwin,* Hopk. 471; *Bolander* v. *Atwell,* 14 Ia. 35; *United States* v. *Samperyac,* 27 Fed. Cas. 933, approved in 32 Pet. 222; *Pegg* v. *Davis,* 2 Blatch. 281; *Colenck* v. *Hooper,* 3 Ind. 316. But in this case appellee did not introduce any proof to sustain the allegations of the bills as to the assignment, or of any fact incident thereto, but relied solely on the statements contained in the pleadings.

We think the other grounds of the motion are without merit. Aden B. Ice, of whom the bills allege Emma M. Ice purchased lot 72 solely with her own funds and fraudulently procured him to convey it to C. L. Burdick and her to reconvey it to H. L. Flanagan, was not a necessary party, as no relief was prayed against him and his rights are in nowise affected by the decrees. *Kirby* v. *Steele,* 65 W. Va. 719. And the third ground of the motion is not well taken, since under the statute a defendant against whom an order of publication is taken is required to appear within thirty days after the *first* and not the last publication thereof, as appellants contend.

We therefore reverse the default decrees, and remand the cause, with leave to plaintiff to amend the bills, if he be so advised, conformably with the principles herein announced, and otherwise to proceed therein according to the principles governing courts of equity.

*Reversed and remanded.*